**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| FRANCES CURD, individually and on behalf of all others similarly situated, | : <br> : <br> : |
| | :     Civil Action No. 2:22-CV-03174-GLR |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| SPIRIT AIRLINES, INC., | : <br> : |
| Defendant. | : <br> : |

**DEFENDANT SPIRIT AIRLINES, INC.'S**
**MOTION TO DISMISS COMPLAINT**

Defendant Spirit Airlines, Inc. ("Spirit"), by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves this Court to dismiss with prejudice the Complaint filed by Plaintiff Frances Curd. In support thereof, Spirit submits the accompanying memorandum of law.

Dated this 20th day of January, 2023.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ *Tonya M. Esposito, Esquire*
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

Mark A. Salky, Esq. (admitted *pro hac vice*)
Jordanna Ishmael, Esq. (admitted *pro hac vice*)
Greenberg Traurig, P.A.
333 S.E. 2nd Ave., Ste. 4400

</div>

Miami, FL 33131
Telephone: 305-579-0816
Fax: 305-579-0717
Mark.salky@gtlaw.com
ishmaelj@gtlaw.com

Rebekah S. Guyon, Esq. (admitted *pro hac vice*)
1840 Century Park East, Ste. 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7716
Rebekah.guyon@gtlaw.com

*Counsel for Defendant Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2023, I electronically filed the foregoing Motion to Dismiss using the CM/ECF System which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ *Tonya M. Esposito, Esquire*
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

*Counsel for Defendant Spirit Airlines, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

---

FRANCES CURD, individually and on behalf
of all others similarly situated,

            Plaintiff,

    v.

SPIRIT AIRLINES, INC.,

            Defendant.

---

:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 2:22-CV-03174-GLR

**DEFENDANT SPIRIT AIRLINES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>MOTION TO DISMISS COMPLAINT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................... 1

II. FACTUAL BACKGROUND ............................................................................................ 3

    A.    Spirit's Disclosures on the Spirit.com Website ...................................................... 3
    B.    Spirit's Use of Session Replay.............................................................................. 4
    C.    Plaintiff Frances Curd's Interactions with the Website and her Claims ................ 5

III. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT .................. 6

    A.    Standard for Motions to Dismiss Pursuant to Rule 12(b)(1) ................. 6
    B.    Constitutional Requirements for Standing............................................................. 6
    C.    Plaintiff Has Not and Cannot Establish a Concrete Harm ..................................... 7

IV. PLAINTIFF HAS FAILED TO STATE A CLAIM......................................................... 9

    A.    Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6) ................ 9
    B.    Plaintiff's Claims Against Spirit are Preempted by the ADA ............................. 10
    C.    Plaintiff Fails to Allege a Plausible Violation of MWESA  .............................. 14

        1.    Session Replay Software Falls Under MWESA's "Telephone
            "Exemption". ............................................................................... 14
        2.    Plaintiff does Not Allege that Spirit Captured the "Contents" of
            Her Communications. ................................................................. 16
        3.    Plaintiff has Not Alleged That Her Communications were
            Intercepted Contemporaneously with Transmission................................ 18

    D.    Plaintiff Fails to Plausibly Allege Intrusion Upon Seclusion.  .......................... 19
    E.    Plaintiff Consented to Spirit's Recording........................................................... 22

V.  CONCLUSION............................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A Soc'y Without a Name v. Virginia,*
655 F.3d 342 (4th Cir. 2011) ............................................................................................10

*Adams v. Bain,*
697 F.2d 1213 (4th Cir. 1982) ............................................................................................6

*Air Evac EMS, Inc. v. Cheatham,*
910 F.3d 751 (4th Cir. 2018) ..........................................................................................2, 11

*Andreadakis v. Ctr. for Disease Control & Prevention,*
No. 3:22CV52 (DJN), 2022 WL 2674194, at *12 (E.D. Va. July 11, 2022)..........................11

*In re Am. Airlines, Inc., Privacy Litig.,*
370 F. Supp. 2d 552 (N.D. Tex. 2005) ............................................................................12, 14

*Am. Airlines, Inc. v. Wolens,*
513 U.S. 219 (1995)..........................................................................................................12, 13

*Asabre v. Retail Servs. & Sys., Inc.,*
No. PWG-22-148, 2022 WL 4326536 (D. Md. Sept. 19, 2022)...............................................7

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................10, 20, 21

*Beck v. McDonald,*
848 F.3d 262 (4th Cir. 2017) ........................................................................................6, 7, 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................................9, 20

*Charter Oak Fire Ins. Co., v. Hearty Pet, Inc.,*
No. 22-CV-02290, 2023 WL 170426 (D. Md. Jan. 12, 2023)...........................................9, 17

*Copeland v. Nw. Airlines Corp.,*
No. 04-2156 M1/V, 2005 WL 2365255 (W.D. Tenn. Feb. 28, 2005) ....................................13

*Dreher v. Experian Info. Sols., Inc.,*
856 F.3d 337 (4th Cir. 2017) ................................................................................................7

*Fletcher v. Price Chopper Foods of Trumann, Inc.,*
220 F.3d 871 (8th Cir. 2000) ..............................................................................................20

*Fraser v. Nationwide Mut. Ins. Co.,*
352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004).......................................................18

*Frazier v. Experian Info. Sols., Inc.,*
No. CV GLR-18-0068, 2019 WL 13247929 (D. Md. July 25, 2019) (Russell,
III, J.).............................................................................................................................7, 9

2

*Goldstein v. Costco Wholesale Corp.*,
    559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...........................................................17, 21

*Goldstein v. Luxottica of Am., Inc.*,
    No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) .........................17

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ...........................................................17, 18

*Harris v. Wells Fargo Corp. Office Headquarters*,
    No. 22-CV-00580, 2023 WL 155244 (D. Md. Jan. 11, 2023)..............................10

*Hodges v. Delta Airlines*, *Inc.*,
    44 F.3d 334 (5th Cir. 1995) ...............................................................................13

*In re Jetblue Airways Corp. Priv. Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ......................................................2, 12, 13

*James v. Synovus Bank*,
    No. 19-CV-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020) .............................23

*Johnson v. Blue Nile, Inc.*,
    No. 20-CV-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .........................18

*Kislov v. Am. Airlines, Inc.*,
    No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022) ..........................12, 13

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ..............................................................................19

*Kumar v. Mahone*,
    No. CV GLR-21-735, 2022 WL 279798 (D. Md. Jan. 31, 2022).........................9

*Marrs v. Marriott Corp.*,
    830 F. Supp. 274 (D. Md. 1992) ........................................................................19

*Maryland v. Macon*,
    472 U.S. at 469 (1985)........................................................................................21

*Massie v. Gen. Motors LLC*,
    No. 21-CV-787, 2022 WL 534468 (D. Del. Feb. 17, 2022)...........................2, 9

*McGarry v. Delta Air Lines, Inc.*,
    No. CV 18-9827-MWF (Ex), 2019 WL 2558199 (C.D. Cal. June 18, 2019),
    *aff'd*, 812 F. App'x 625 (9th Cir. 2020) .............................................................13

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)..............................................................................11, 12, 13

*Northwest, Inc. v. Ginsberg*,
    134 S.Ct. 1422, 1422 (2014) ..............................................................................11

*In re Nw. Airlines Priv. Litig.*,
    No. CIV.04-126(PAM/JSM), 2004 WL 1278459 (D. Minn. June 6, 2004)..........13

*Pena v. Brit. Airways, PLC (UK)*,
No. 18 CV 6278 (LDH) (RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30,
2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) ...................................................13

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876-MWF (Ex), 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019),
*aff'd*, 812 F. App'x 591 (9th Cir. 2020) ...........................................................13

*Pruitt v. Resurgent Cap. Servs.*,
LP, No. CV JKB-21-2615, 2022 WL 2530408 (D. Md. July 7, 2022) ...................8

*Quigley v. Yelp, Inc.*,
No. 17-CV-03771, 2018 WL 7204066 (N.D. Cal. 2018) .....................................19

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) .........................................................................6

*Rodriguez v. Google LLC*,
No. 20-CV-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .........................19

*Rosenow v. Facebook, Inc.*,
No. 19-CV-1297, 2020 WL 1984062 (S.D. Cal. 2020) .......................................19

*Rullan v. Goden*,
No. 12-CV-2412, 2014 WL 4926192 (D. Md. Sept. 30, 2014) .............................21

*Sec'y of State for Defence v. Trimble Navigation Ltd.*,
484 F.3d 700 (4th Cir. 2007) ........................................................................10

*Shafer v. Warden*,
No. 21-CV-3052, 2023 WL 185517 (D. Md. Jan. 13, 2023) ................................10

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) .....................................................................2, 11

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...............................................................................6, 8

*Stamat v. Grandizio Wilkins Little & Matthews, LLP*,
No. CV SAG-22-00747, 2022 WL 3919685 (D. Md. Aug. 31, 2022) ...................8

*Swiggum v. EAN Servs., LLC*,
2021 WL 3022735 (M.D. Fla. Jul 16, 2021) ....................................................18

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ......................................................................1, 7, 8, 9

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
73 F.3d 1423 (7th Cir. 1996) ....................................................................12, 13

*Trinity Outdoor, L.L.C. v. City of Rockville*,
123 Fed. Appx. 101 (4th Cir. 2005) .................................................................6

*United States v. Mitchell*,
No. 11-CR-248, 2013 WL 3808152 (M.D. Fla. July 22, 2013) ...........................23

*Veney v. Wyche,*
    293 F.3d 726 (4th Cir. 2002) .................................................................10

*Washington v. Glob. Tel\*Link Corp.,*
    No. 20-CV-01932, 2022 WL 3647782 (D. Md. Aug. 24, 2022) ...........22

*Whye v. Concentra Health Servs., Inc.,*
    No. 12-CV-3432, 2013 WL 5375167 (D. Md. Sept. 24, 2013), *aff'd,* 583 F.
    App'x 159 (4th Cir. 2014) .........................................................3, 20, 21

*Wikimedia Found. v. Nat'l Sec. Agency,*
    857 F.3d 193 (4th Cir. 2017) ...................................................................6

*Whitmore v. Arkansas,*
    495 U.S. 149, 155 (1990) .........................................................................7

*Woodbury v. Victory Van Lines,*
    286 F. Supp. 3d 685 (D. Md. 2017) .......................................................20

**State Cases**

*Boston v. State,*
    175 A.3d 836 (Md. App. 2017).............................................................22

*Briddell v. State,*
    No. 1220, 2016 WL 4698158 (Md. App. Sept. 7, 2016) .......................23

*People ex rel. Harris v. Delta Air Lines, Inc.,*
    247 Cal. App. 4th 884 (2016) ...........................................................2, 11

*Jackson v. State,*
    18 So. 3d 1016 (Fla. 2009)....................................................................23

*Jacome v. Spirit Airlines Inc.,*
    2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .....................3, 17, 23, 24

*Martin v. State,*
    96 A.3d 765 (Md. App. 2014)......................................................3, 18, 19

*Pemberton v. Bethlehem Steel Corp.,*
    66 Md. App. 133, 502 A.2d 1101 (Md. Ct. Spec. App. 1986)..............19

*Schmerling v. Injured Workers' Ins. Fund,*
    795 A.2d 715 (Md. 2002) .........................................................14, 15, 16

*Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.,*
    No. A-2287-12T3, 2014 WL 6390571 (N.J. Super. Ct. App. Div. Nov. 18,
    2014) .......................................................................................................21

*Whack v. State,*
    615 A.2d 1226 (Md. App. 1992)............................................................22

**Federal Statutes**

18 U.S.C. § 2510(4) .........................................................................................18

18 U.S.C. § 2510(8) ............................................................................................16

49 U.S.C. § 41713(b)(1) ...................................................................................2, 10

**State Statutes**

740 ILCS 14/1, *et seq.* .....................................................................................12

Fed. R. Civ. P. § 12(b)(1) .....................................................................................6

Fed. R. Civ. P. § 12(b)(6) ...............................................................6, 10, 14, 17

Md. Cts. & Jud. Proc. § 10-401(4) ...............................................................3, 16

Md. Cts. & Jud. Proc. § 10-401(8) ................................................................14

Md. Cts. & Jud. Proc. § 10-401, *et seq.* ..................................................1, 3, 14

Md. Cts. & Jud. Proc. § 10-402 .......................................................................14

Md. Cts. & Jud. Proc. § 10-402(c)(3) ............................................................22

# I.    <u>INTRODUCTION</u>

Plaintiff Frances Curd is attempting to allege privacy claims over information she voluntarily provided on [www.spirit.com](www.spirit.com) (the "Website") so that she could communicate with Spirit about its services. Plaintiff claims that she visited the Website—on undisclosed dates—and during those visits Spirit used software to collect her "mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of web pages visited, and/or other electronic communications." Compl ¶¶ 1, 45. Plaintiff claims that Spirit's collection of these website interactions with the use of software provided by a third-party invaded her privacy and constituted an unlawful wiretapping in violation of the Maryland Wiretap Act, Md. Cts. & Jud. Proc. § 10-401, *et seq.* ("MWESA"). But Plaintiff declines to inform the Court that before she could access the Spirit Website or provide information that she claims Spirit unlawfully acquired, she affirmatively clicked on a prominently displayed banner that informed her: "By continuing to use our website, you acknowledge the use of cookies. **Privacy Policy**". *See* Request for Judicial Notice ("RJN") at Ex. 1. The Privacy Policy embedded within the banner expressly disclosed that Spirit collects "how you interact with our website. This may include which links you click on, or information that you type into our online forms." *See id.* at Ex. 2, p. 3 (Spirit's December 22, 2022 Privacy Policy); *id.* at Ex. 3, p. 3 (Spirit's April 5, 2022 Privacy Policy). Plaintiff cannot maintain a privacy claim for conduct she consented to by continuing to use the Website after she was presented with this notice. All of her claims fail and should be dismissed.

**First**, Plaintiff has not and cannot establish an Article III injury in fact necessary for her to maintain suit in federal court. A bare procedural violation of MWESA is insufficient to establish an injury in fact. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Plaintiff's claims are premised upon a theory that Spirit acquired her personal communications, or potentially shared her communications, which she contends puts her at risk for identity theft or fraud. Compl. ¶ 36.

But courts addressing nearly identical claims arising from the use of software to record consumer website interactions have held that where, as here, the website interactions are anonymized, a plaintiff's privacy is not invaded and she suffers no concrete harm. *Massie v. Gen. Motors LLC*, No. 21-CV-787, 2022 WL 534468 (D. Del. Feb. 17, 2022).

**Second**, Plaintiff's claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"). Preemption under the ADA is broad in scope and extends to any state law claim "having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). The Fourth Circuit construes "service" broadly to encompass matters incidental to and distinct from the actual transportation of passengers, *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998), and finds the ADA preempts state law that "relates to" or has a "connection with" an airline's prices, routes, or services even if the law does not "referenc[e] them directly." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 (4th Cir. 2018). Courts around the country have held that state law privacy claims arising from the information an air carrier collects in the course of providing ticketing and reservation services, as Plaintiff asserts here, are preempted under the ADA because of the significant impact they would have on those core services. *E.g.*, *People ex rel. Harris v. Delta Air Lines, Inc*., 247 Cal. App. 4th 884 (2016); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005).

**Third**, Plaintiff has failed to state a plausible claim under MWESA: (1) session replay software falls under MWESA's "telephone exemption"; (2) Plaintiff fails to allege that the *contents* of her communications were intercepted, as that term is defined in MWESA; and (3) Plaintiff fails to allege that there was any interception *contemporaneous with transmission* of her alleged communications. MWESA only prohibits the unauthorized acquisition of the *contents* of a

communication, while the communication is *contemporaneously transmitted*, and with the use of an unlawful device that is not within MWESA's "telephone exemption." *See* Md. Cts. & Jud. Proc. § 10-401, *et seq.* The "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications," Compl. ¶ 1, that Plaintiff claims Spirit acquired have been uniformly rejected as non-actionable non-contents because they fail to provide the "substance, purport, or meaning" of a communication. Md. Cts. & Jud. Proc. § 10-401(4); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021). Plaintiff not only fails to allege with non-conclusory facts that Spirit acquired her communications contemporaneously with transmission, but she concedes that Spirit acquired communications from a server, which is not an acquisition at the time of transmission as MWESA requires. Compl. ¶¶ 24, 42; *Martin v. State*, 96 A.3d 765, 776 (Md. App. 2014).

**Fourth**, Plaintiff has not alleged a plausible claim for intrusion upon seclusion. She has no expectation of privacy in her communications on the Website. *Whye v. Concentra Health Servs., Inc.*, No. 12-CV-3432, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014). She also does not allege that the non-substantive data Spirit acquired would be highly offensive to an ordinary person. *Id.* at *26.

**Fifth**, Plaintiff's consent bars her claims. Before Plaintiff could use the Website, she was put on notice that Spirit would record the information she complains of in a prominent banner that she affirmatively acknowledged. *Jacome*, 2021 WL 3087860, at *7.

## II.  FACTUAL BACKGROUND

### A.  Spirit's Disclosures on the Spirit.com Website

When a visitor directs his or her web browser to the Website, Spirit prominently displays a banner that states: "By continuing to use our website, you acknowledge the use of cookies. **Privacy Policy**." RJN at Ex. 1. A link to Spirit's Privacy Policy is embedded in the blue underlined

text. *Id*. This banner is displayed in white while the remainder of the Website is darkened. *Id*. A visitor must click on the banner—the visitor has the option to "REJECT TARGETING COOKIES" or "ACCEPT ALL COOKIES," a "clickwrap agreement" —before the visitor can proceed to interact with any other aspects of the Website. *Id*.; *see also id.* at Ex. 4.

Spirit's Privacy Policy linked in the banner expressly informs Website visitors that Spirit collects information on "how you interact with our website. This may include which links you click on, or information that you type into our online forms." *Id.* at Ex. 3, p. 3.[1] The Privacy Policy additionally informs visitors to the Website:

> **If you save your info with Spirit or book on our site, we use cookies to monitor and maintain information about how you use our site and what you book**. **If you have not saved your info with us or booked from our site, we may monitor and maintain information about your use of our Web site in a manner that does not identify you**. In either case, this information helps us to serve you better by improving our site design, as well as our products, services, contests, and promotions.

*Id*. at Ex. 3, p. 6 (emphasis added).[2]

In other words, before a visitor to the Website can provide any information or attempt to enter communications on the Website, the visitor must affirmatively acknowledge Spirit's Privacy Policy, which discloses that website interactions, including information input into online forms or to partially complete a booking transaction, will be monitored and recorded.

### B.    Spirit's Use of Session Replay

Plaintiff's claims arise from Spirit's use of "session replay" software on the Website. Compl. ¶ 1. For a period of time from July 31, 2019, through March 1, 2021, and again starting in July 2022, Spirit has used software provided by FullStory on the Website, but it does not operate as Plaintiff contends. *See* Declaration of Rocky Bruce Wiggins ¶ 2. ("Wiggins Decl.").

---

[1] Spirit's Privacy Policy was updated after Plaintiff filed suit. The current Privacy Policy contains the same disclosure regarding the collection of visitor's website interactions. *Id*. at Ex. 3, p. 3.
[2] The same disclosure is in the current Privacy Policy. RJN at Ex. 2, p. 7.

Plaintiff describes session replay software as code "implemented on www.spirit.com" that allows Spirit to "record, save, and replay website visitors' interactions with a given website." Compl. ¶ 22. Plaintiff contends that session replay software allows a website operator to capture "virtually every user action" on a site, such as "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, . . . numerous other form[s] of a user's navigation and interaction through the website," and "touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, networks requests, and more." Compl. ¶¶ 25, 42. Plaintiff contends that this information is "not necessarily anonymize[d]." Compl. ¶¶ 30, 42. However, Spirit has never allowed session replay software supplied by FullStory to collect personal identifying information from website visitors. Wiggins Decl. ¶ 3. Any data collected by Spirit through FullStory session replay software is "fully anonymized and not traceable to any specific Website user." *Id.*

### C.   Plaintiff Frances Curd's Interactions with the Website and her Claims

Plaintiff alleges that she visited the Website from her computer in Maryland. Compl. ¶ 44. She neither alleges when she visited nor that she actually made any purchases during these visits. Although she contends that session replay software can collect a host of her website interactions, such as clicks, scrolls, and mouse movements, Compl. ¶ 25, she does not describe the contents of any information she input into any fields on the Website during her visits. *See id.* ¶¶ 45-47. As an "example" of her claims, Plaintiff provides an unauthenticated screenshot allegedly depicting "information sent to . . . FullStory . . . after looking for flights . . . on www.spirit.com." *Id.* ¶ 48. Assuming this search information is Plaintiff's—which she does not allege—she does not claim, because it is not true, that she did not intend to provide this information to Spirit or intend that Spirit would use the information to display possible flight options in response to her.

## III. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT

### A. Standard for Motions to Dismiss Pursuant to Rule 12(b)(1)

Because a motion to dismiss for lack of standing implicates the Court's subject matter jurisdiction, it is properly brought under Fed. R. Civ. P. 12(b)(1). *Trinity Outdoor, L.L.C. v. City of Rockville*, 123 Fed. Appx. 101, 105 (4th Cir. 2005). "When an issue of standing is asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-69 (4th Cir. 1991)). A challenge to standing may be facial or factual. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In a facial challenge to standing, courts apply the same standard as a motion to dismiss under Rule 12(b)(6), discussed below. *Id.* In a factual challenge, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768. "In this posture, 'the presumption of truthfulness normally accorded a complaint's allegations does not apply.'" *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

### B. Constitutional Requirements for Standing

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

Under Article III, "an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id.* at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.* at 2204. An injury in fact must be concrete in "both a qualitative and temporal sense," and must be "distinct and palpable, as opposed to merely abstract." *Beck*, 848 F.3d at 270 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Ramirez*, 141 S. Ct. at 2204. *Ramirez* represented a marked departure from prior Supreme Court precedent. In *Ramirez*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022) (quoting *Ramirez*, 141 S. Ct. 2205); *see Frazier v. Experian Info. Sols., Inc.*, No. CV GLR-18-0068, 2019 WL 13247929, at *3 (D. Md. July 25, 2019) (Russell, III, J.) (to determine whether a harm is sufficiently real or concrete, courts consider whether a statutory injury (1) "has a 'common law analogue' (a traditional right to sue)"; (2) "whether 'Congress sought to prevent' the harm alleged;" or (3) "whether the statutory violation caused a harm with a 'real world effect.'") (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017)).

## C. Plaintiff Has Not and Cannot Establish a Concrete Harm

Plaintiff's claims arise from Spirit's use of session replay software to record her interactions and alleged communications on the Website. Compl. ¶¶ 1, 42, 45. Plaintiff claims that the recording of her keystrokes, mouse movements and clicks, pages viewed, and information entered online

(without specifying what information she actually entered) was done without her consent in violation of MWESA and constituted an invasion of her privacy under Maryland common law. Compl. ¶¶ 63-91. But under *Ramirez*, simply alleging the elements of MWESA is insufficient for Plaintiff to satisfy her burden of establishing Article III injury in fact. *Ramirez*, 141 S. Ct. at 2205.

Similarly, although Plaintiff contends that the use of session replay could have "expose[d] visitors to identity theft, online scams, and other privacy threats," Compl. ¶ 36, she does not allege that she has personally been put at risk or suffered a privacy threat. *Beck*, 848 F.3d 274-75 (allegation that data breaches created an enhanced risk of future identity theft was too speculative to constitute an injury in fact). Her conclusory allegations of harm such as "mental anguish" or lost "economic value" in information are not presumed true when ruling on Spirit's 12(b)(1) motion. *See* Compl. ¶¶ 87-90. These allegations "are pled at too high a level of generality to allow the Court to determine whether [Plaintiff] has carried her burden to establish standing." *Pruitt v. Resurgent Cap. Servs.*, LP, No. CV JKB-21-2615, 2022 WL 2530408, at *5 (D. Md. July 7, 2022) (finding no concrete injury where plaintiff conclusorily alleged a debt collection letter caused confusion but did "not explain *how* the Letter did so" (italics in original)); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. CV SAG-22-00747, 2022 WL 3919685, at *7 (D. Md. Aug. 31, 2022) ("[plaintiff] alleges nothing more than similarly bare assertions of emotional harm" where plaintiff alleged "emotional distress and suffered lost time, annoyance, interference, and inconvenience . . . and has anxiety and increased concerns for the loss of his privacy, without alleging any facts to support these assertions." (internal quotations omitted)). Facially, plaintiff has alleged at most a bare procedural violation, which is insufficient under *Ramirez* and *Spokeo*.

Factually, Plaintiff cannot allege a concrete harm from Spirit's use of session replay software because the only information that Spirit would have acquired from Plaintiff with session replay

software was anonymized. Wiggins Decl. ¶ 3. Her wiretapping claim based on the acquisition of anonymized data does not and cannot bear a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Ramirez*, 141 S. Ct. at 2205; *Frazier*, 2019 WL 13247929, at *3. Nor can she establish that her privacy was invaded by Spirit's collection of information that does not identify her, because she has no expectation of privacy in anonymous data. *See Massie v. Gen. Motors LLC*, CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) (holding that the plaintiffs did "not have a reasonable expectation of privacy over *anonymized data* captured by the Session Replay software at issue here," and lacked an Article III injury. (italics added)). Any anonymous information collected by the session replay software was not personal or private within the common law understanding of a privacy right. *See Kumar v. Mahone*, No. CV GLR-21-735, 2022 WL 279798, at *8 (D. Md. Jan. 31, 2022) (dismissing claim for intrusion upon seclusion where defendant took photographs that plaintiff printed at a pharmacy because of the "absence of any additional information about the photographs")). It is similarly not true that Spirit used session replay to acquire her personally identifying information, even if the Court assumes that she provided it to Spirit—which she doesn't allege—and accepts her conclusory allegation that it had economic value. Wiggins Decl. ¶ 3; *see* Compl. ¶ 15. Plaintiff lacks a concrete harm and her claims should be dismissed for lack of jurisdiction.

## IV.  <u>PLAINTIFF HAS FAILED TO STATE A CLAIM</u>

### A.  **Standard for Ruling on Motions to Dismiss Pursuant to Rule 12(b)(6)**

"To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim to relief that is plausible on its face." *Charter Oak Fire Ins. Co., v. Hearty Pet, Inc.,* No. 22-CV-02290, 2023 WL 170426, at *1 (D. Md. Jan. 12, 2023) (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than bald accusations or mere speculation." *Id.* Thus, "'[a] court decides whether

the pleading standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably' infer that the plaintiff is entitled to the legal remedy sought." *Id.* (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Harris v. Wells Fargo Corp. Office Headquarters*, No. 22-CV-00580, 2023 WL 155244, at *2 (D. Md. Jan. 11, 2023) (quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court can consider matters incorporated by reference in a Complaint and that are subject to judicial notice when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g., Shafer v. Warden*, No. 21-CV-3052, 2023 WL 185517, at *3 (D. Md. Jan. 13, 2023) ("The court may 'consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

### B. Plaintiff's Claims Against Spirit are Preempted by the ADA

The Airline Deregulation Act includes a broad preemption clause: "[e]xcept as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Congress enacted the ADA in 1978 to deregulate the airline industry to reflect its determination that "maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as

variety [and] quality . . . of air transportation services." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992).

The Supreme Court has made clear that the ADA's express preemption provision "has a *broad* scope" and "an expansive sweep," and that the "ordinary meaning of these words . . . express a *broad* pre-emptive purpose." *Morales*, 504 U.S. at 383–84 (emphasis added). In *Morales*, for example, the Court defined the phrase "related to" under the ADA to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into associate with or connection with." *Morales*, 504 U.S. at 383; *see Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 (4th Cir. 2018) (a state law "relate[s] to a price, route, or service" of an airline "when it has 'a connection with, or reference to, airline prices, routes, or services . . . even without referencing them directly.'") (quoting *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422, 1422 (2014)). For example, the ADA's preemption provision displaces a "state's generally applicable consumer protection laws related to advertising" and "statutory causes of action related to fraudulent and deceptive practices . . . ." *Cheatham*, 910 F.3d at 762; *see Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *12 (E.D. Va. July 11, 2022) (dismissing invasion of privacy claim and other state law claims where the complained-of conduct of the airline related to its services). The Fourth Circuit has construed "service" broadly to encompass matters incidental to and distinct from the actual transportation of passengers, such as an airline's boarding procedures. *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998) (tort claims "based in part upon [an airline's] refusal of permission to board" are preempted because the claims "relate to" boarding procedures, "a service rendered by an airline").

Courts around the country have found that the ADA preempts state privacy claims like those Plaintiff asserts here. For example, in *People ex rel. Harris v. Delta Air Lines, Inc*., 247 Cal.

App. 4th 884 (2016), the court held that the ADA preempted state claims based on Delta's alleged failure to bring its mobile application into compliance with California's Online Privacy Protection Act. *Id.* at 900-906. The court reasoned that, the "Fly Delta mobile application [was] selected and designed to facilitate access to the airline's services," and thus "is a marketing mechanism 'appropriate to the furnishing of air transportation services.'" *Id.* at 901 (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)). Because plaintiff's claim related to the transportation services provided through Delta's mobile app, it was preempted. *Id.* at 903 (citing *Morales*, 504 U.S. at 390).

In *In re Am. Airlines, Inc.*, the court held that state privacy claims were preempted where, as here, plaintiffs' information allegedly obtained or used without permission was collected "from customers when taking reservations or selling air transportation." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 561 (N.D. Tex. 2005). Similarly, in *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022), the court held that claims under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*, arising from American's alleged use of interactive voice software to create unauthorized "voiceprints," were preempted. *Id.* at *3. There, plaintiffs' biometrics were collected when they called American's customer service hotline, and the court held that "[c]ustomers anticipate that, when they purchase an airline ticket, carriers will provide customer assistance, just as customers expect 'baggage handling' or 'food and drink.'" *Id.* (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996)).

Further, in *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005), the court held that the ADA preempted state privacy claims arising from JetBlue's allegedly unauthorized sharing of passenger information in violation of its privacy policy. *Id.* at 315-16. The

court held that, because JetBlue's privacy policy was made "in the course of communicating with potential passengers," any attempt to "regulate the representations and commitments that JetBlue makes in connection with reservations and ticket sales directly affects the airline's provision of those services." *Id.* As the court explained, "[t]his claim fits squarely within the range of state law actions that the Supreme Court concluded, in *Wolens* and *Morales*, are expressly preempted by the ADA, because it represents a direct effort to regulate the manner in which JetBlue communicates with its customers in connection with reservations and ticket sales . . . ." *Id.* at 315 (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995)). 3

As in these cases, the ADA preempts Plaintiff's claims under MWESA and invasion of privacy claims. Plaintiff's claims are based on her communications on the Website. Compl. ¶ 31. Like the customer service line in *Kislov*, the privacy policy in *Jetblue*, and the mobile application in *Delta*, the Website is a core part of Spirit's "services." Customers can search for flight and travel

---

3 Several other courts have held that the ADA preempts state claims based on privacy violations when, as here, the claims relate to the information airlines obtain in providing ticketing and reservation services. *See Pena v. Brit. Airways, PLC (UK)*, No. 18 CV 6278 (LDH) (RML), 2020 WL 3989055, at *1, 5 (E.D.N.Y. Mar. 30, 2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) (claims under New York consumer protection law for failing to safeguard data in violation of airline privacy policy preempted because airline collected data when customers purchased tickets and made reservations on website and mobile application); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (Ex), 2019 WL 1598761, at *1, 4–5 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020) (breach of contract claim for airline's alleged mishandling of passenger data collected through online "travel reservation, air transportation, and related services" preempted); *McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (Ex), 2019 WL 2558199, at *1–2, 5–6 (C.D. Cal. June 18, 2019), *aff'd*, 812 F. App'x 625 (9th Cir. 2020) (breach of contract claim for airline's failure to safeguard data collected when passengers made online reservations preempted); *Copeland v. Nw. Airlines Corp.*, No. 04-2156 M1/V, 2005 WL 2365255, at *1, 3 (W.D. Tenn. Feb. 28, 2005) (claim under Tennessee consumer protection law for disclosing passenger data from "Airline Passenger and Reservation database" preempted); *In re Nw. Airlines Priv. Litig.*, No. CIV.04-126(PAM/JSM), 2004 WL 1278459, at *1, 4 (D. Minn. June 6, 2004) (claim under Minnesota consumer protection law for disclosing "passenger name records," in violation of airline privacy policy preempted; records included names, flight numbers, and hotel reservations).

information, make flight reservations, and buy tickets on the Website—indeed, it is this information that Curd claims Spirit acquired in violation of state law. Compl. ¶ 48; RJN at Ex. 4 (spirit.com site). Any communications Curd had with Spirit on the site would pertain to those core services. RJN at Ex. 4. "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline." *In re Am. Airlines, Inc.*, 370 F. Supp. 2d at 564. Thus, Plaintiff's claims are preempted.

### C. Plaintiff Fails to Allege a Plausible Violation of MWESA

Plaintiff's barebones complaint is not sufficient to meet the requirements under Rule 12(b)(6) because: (1) session replay software falls under the MWESA's "telephone exemption"; (2) Plaintiff fails to allege that the *contents* of her communications were intercepted, as that term is defined in the MWESA; and (3) Plaintiff fails to allege that there was any interception *contemporaneous with transmission* of her alleged communications. *See* Md. Cts. & Jud. Proc. §§ 10-401, 10-402. The Complaint should be dismissed on each of these independent grounds.

#### 1. Session Replay Software Falls Under MWESA's "Telephone "Exemption".

Section 10-401(8) of MWESA defines an "electronic, mechanical, or other device" as "any device or electronic communication," *except* "[a]ny telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof . . . or furnished by the subscriber or user for connection to the facilities of the service and used in the ordinary course of business." The "telephone exemption" to liability under the MWESA has two elements: "(1) the equipment must be a telephone instrument, equipment or other facility for the transmission of electronic communications, or any component thereof; and (2) the equipment must be used in the ordinary course of the subscriber's or user's business." *Schmerling v. Injured*

*Workers' Ins. Fund*, 795 A.2d 715, 728 (Md. 2002) (quotation marks omitted). In analyzing the telephone exemption, the *Schmerling* court stated that the "electronic communications" portion of the exemption was added explicitly to address "changes in the telecommunication industry" such as "email." *Schmerling*, 795 A.2d at 724.

In *Schmerling*, the Maryland Court of Appeals considered whether a device that "directed incoming telephone calls to specific extensions," "recorded the voices of both the . . . employee and any party to the conversation," and allowed "supervisors . . . [to] review calls at their convenience and retrieve calls either at random or about which complaints or problems had been reported" fell into the telephone exemption under MWESA. *Schmerling*, 795 A.2d at 717. The court held that to be within the telephone exemption, "[t]he utility of the add-on equipment must have some relation to the enhancement of the communication system." *Id.* at 726. Accordingly, a phone extension did fall within the telephone exemption because it added functionality to the phone system, just like a speaker phone attachment. *See id.* Ultimately, the court in *Schmerling* concluded that the device did not fall within the exception because it "in no way increased the effectiveness of the telecommunications system . . . the *telecommunications equipment itself was not improved, enhanced, or furthered by the addition of the monitoring and recording devices*." *Id.* at 727 (emphasis in original).

Under *Schmerling*'s analysis, the session replay software used by Spirit is the clearly within the telephone exemption under the MWESA. First, the entire purpose of session replay software is "to allow Spirit to ensure the Website is functioning while users interact with the Website and optimize the Website from a consumer experience perspective." *See* Compl. ¶¶ 12, 13. ("… information [collected by companies] is valuable to companies because they can use this data to improve customer experiences, refine their marketing strategies… In a consumer-driven world,

the ability to capture […] customer data to shape products, solutions, and the buying experience is critically important to a business's success.") Without this technology, the Website functionality and user experience would certainly suffer, because glitches, bugs, or malfunctioning elements of the Website would be less easy to ascertain. *See* RJN at Ex. 2, p. 3 ("We use [website interactions] to understand how you interact with our website to better improve it…"). Even Plaintiff concedes that session replay can be used to "improve customer experiences." Compl. ¶ 12. The "telecommunications equipment [is] itself . . . improved, enhanced, [and] furthered by the addition of the monitoring and recording" session replay software. *Schmerling*, 795 A.2d at 727. Second, the use of session replay software is in the course of Spirit's ordinary course of business. Spirit uses session replay software to improve customer experiences on its Website—its primary medium of connecting with customers for the purpose of selling tickets and allowing customers to manage their reservations. RJN at Ex. 4 (Spirit Website). As such, improving the Website is one of the cornerstones of Spirit's business. Therefore, the Complaint should be dismissed because session replay software is within MWESA's telephone exemption and cannot give rise to liability.

<div align="center">

2.     <u>Plaintiff does Not Allege that Spirit Captured the "Contents" of Her Communications.</u>

</div>

Section 10-401(4) of the MWESA defines "contents" as "any information concerning the identity of the parties to the communication or the existence, *substance, purport, or meaning of that communication*." (Emphasis added). The Federal Wiretap Act defines "contents" identically. *See* 18 U.S.C. § 2510(8). Plaintiff alleges that Spirit could have acquired her "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications." Compl. ¶ 1. Plaintiff also alleges that "Fullstory . . . records all website visitor actions, including information typed by the website users while on the website. Such information can include names,

emails, phone numbers, addresses, social security numbers, date[s] of birth, and more . . . ." Compl. ¶ 41.

Plaintiff's conclusory claim that her "electronic communications" were acquired is not entitled to the presumption of truth. *See, e.g.*, *Charter Oak Fire*, 2023 WL 170426, at *1-2 (holding that legal conclusions are not entitled to the presumption of truth when ruling on a motion to dismiss pursuant to Rule 12(b)(6)). Further, courts have uniformly held that the specific information Plaintiff claims Spirit acquired is not actionable under wiretapping laws because it is not the "contents" of any communication as a matter of law. *See, e.g.*, *Jacome*, 2021 WL 3087860, at *4 ("Plaintiff alleges that her mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff were intercepted by Spirit . . . [b]ut . . . this is precisely the type of non-record information that courts consistently find do not constitute contents . . . because it does not convey the substance or meaning of any message." (internal quotations omitted; emphasis in original))[4]; *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (mouse clicks, mouse movements, scroll movements, keystrokes, search terms, pages and content viewed, and information inputted by plaintiff not "contents"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (names, addresses, customer identities, or geolocation are not "contents"); *Goldstein v. Luxottica of Am., Inc.*, No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ("mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed not 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message"), *report and recommendation adopted*, No. 21-

---

[4] Florida's wiretapping act, the Florida Security of Communications Act, defines "contents" identically to the Federal Wiretapping Act and virtually identically to MWESA.

CV-80546, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021); *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (IP addresses, locations, browser types, and operating systems are not "contents")[5]; *Swiggum v. EAN Servs., LLC*, 2021 WL 3022735, at *2 (finding that mouse clicks and movements, keystrokes, search terms, information inputted by plaintiff, and pages and content viewed by plaintiff were not "contents").

      3.    <u>Plaintiff has Not Alleged That Her Communications were Intercepted Contemporaneously with Transmission.</u>

Section 10-402(a)(1) of MWESA makes it illegal to "[w]illfully *intercept*, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." (Emphasis added). The Federal Wiretap Act defines "intercept" identically. *See* 18 U.S.C. § 2510(4). "Every circuit court to have considered the matter has held that an 'intercept' under the [Federal Wiretap Act] must occur *contemporaneously with transmission*." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (emphasis added); *see also Martin*, 96 A.3d at 776 ("In light of the nearly identical definitions of 'intercept' and 'electronic communication' in both the Federal and Maryland Wiretap Acts . . . we shall join the federal courts in construing 'intercept' as requiring 'acquisition contemporaneous with transmission' of the messages." (citation omitted)).

Plaintiff does not allege any facts demonstrating that her electronic communications were intercepted contemporaneously with transmission. Rather, Plaintiff merely alleges once, in a conclusory allegation, that "Plaintiff's and Class members' electronic communications are intercepted contemporaneously with their transmission." Compl. ¶ 75. But just "[u]sing the word

---

[5] California's wiretapping act, the California Invasion of Privacy Act, defines "contents" identically to the Federal Wiretapping Act and virtually identically to MWESA. *See Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same.").

'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Spirit] is intercepting [Plaintiff's] data in transit." *Rodriguez v. Google LLC*, No. 20-CV-04688, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022). This allegation is also implausible because Plaintiff claims that her communications were sent to a server controlled to a third party, "rather than the owner of the website where the code is installed," which indicates that Plaintiff's communications were acquired while in electronic storage, *i.e.*, that they were not intercepted. Compl. ¶ 24; *see Martin*, 96 A.3d at 776; *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("to be intercepted in violation of the Wiretap Act, [the communication] must be acquired during transmission, not while it is in electronic storage"). Federal courts frequently dismiss wiretapping claims—like Plaintiff's—where the element of interception is alleged only in conclusory terms. *See Rosenow v. Facebook, Inc.*, No. 19-CV-1297, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (holding the allegation that Yahoo violated the Wiretap Act by using an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim); *Quigley v. Yelp, Inc.*, No. 17-CV-03771, 2018 WL 7204066, at *4 (N.D. Cal. 2018) (dismissing state and federal wiretapping claims where plaintiff alleged "vague references" to the use of "surveillance systems" and "surveillance personnel" but did not "allege with particularity how or when defendant became aware of his communications" allegedly acquired without permission). Plaintiff's MWESA claim must be dismissed.

### D. Plaintiff Fails to Plausibly Allege Intrusion Upon Seclusion.

To state a claim for intrusion upon seclusion under Maryland law, a plaintiff must show that defendant "[1] intentionally [2] intruded upon his solicitude, seclusion or private affairs [3] in a manner that would be highly offensive to a reasonable person." *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 283 (D. Md. 1992) (citing *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101 (Md.

App. 1986)). Regarding the second element, a claim for intrusion upon seclusion will not lie unless "the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff." *Whye*, 2013 WL 5375167, at *14 (citation omitted). In other words, the plaintiff must have had a "legitimate expectation of privacy" in the matters intruded upon to state a claim. *Id.* (quoting *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 877 (8th Cir. 2000)); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 697 (D. Md. 2017) (dismissing claim where the court found plaintiff had failed to "allege[] sufficient facts to show that she had a reasonable expectation of privacy"). As to the third element, an "offensive intrusion" requires "either an unreasonable manner of intrusion, or intrusion for an unwarranted purpose." *Whye*, 2013 WL 5375167, at *14 (citation and emphasis omitted) (holding that the conduct at issue was not an intrusion because it was not highly offensive to a reasonable person). Where "the intrusion is conducted in a reasonable and non-obtrusive manner, it is not actionable." *Id.* (quotation marks and citation omitted).

Plaintiff's intrusion claim must be dismissed because she has not and cannot alleged an expectation of privacy in the information she voluntarily relayed on Spirit's website and Spirit's recording was not highly offensive to a reasonable person. *First*, Plaintiff has not alleged that she had a reasonable expectation of privacy on the Website. Plaintiff's conclusory allegation that she had "an objective, reasonable expectation of privacy in [her] website communications," Compl. ¶ 82, is not sufficient under *Iqbal* and *Twombly*. *Whye*, 2013 WL 5375167, at *4 (holding that the plausibility standard "demands more than bald accusations"). Nor is it reasonable to infer that Plaintiff legitimately expected the information she voluntarily provided on Spirit's commercial

website would be private and not retained by Spirit.[6] Several courts have found that consumers have no reasonable expectation of privacy in communications voluntarily provided on a commercial website, like Plaintiff's website interactions here. *See Goldstein,* 559 F. Supp. 3d at 1321 ("[T]his mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."); *see also Maryland v. Macon*, 472 U.S. 463, 469 (1985) (finding that there is no reasonable expectation of privacy in areas of a business where the public is invited to enter and transact business).

*Second*, Plaintiff has not alleged that any alleged intrusion was highly offensive. Although Plaintiff alleges that Spirit can capture "intimately personal facts," Compl. ¶ 88, she does not allege that she provided any on the Website. The non-descript "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website," Compl. ¶ 25, on a public-facing commercial air carrier's website are not the type of information that "is entitled to be [kept] private . . . by the plaintiff." *Whye*, 2013 WL 5375167, at *21 (rejecting an employee's assertion that he had a reasonable expectation of privacy "in conduct or information openly monitored"); *see also Rullan v. Goden*, No. 12-CV-2412, 2014 WL 4926192, at *11 n.8 (D. Md. Sept. 30, 2014) (finding no invasion of privacy where an email account was seized).

---

[6] The articles Plaintiff cites are not a substitute for her obligation to allege sufficient facts, accepted as true, to plausibly state a claim. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." (emphasis added; quotation marks and citation omitted)). *See also,* Compl. ¶¶ 16-21. The viability of a complaint turns on the factual matter it alleges. *Iqbal*, 556 U.S. at 678. Since the articles averred to are not facts (and, in some cases, do not even purport to consider facts and instead address only theory) they may not sustain an otherwise-defective pleading. *See id.*; *see also Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.*, No. A-2287-12T3, 2014 WL 6390571, at *6 (N.J. Super. Ct. App. Div. Nov. 18, 2014) ("Scholarly articles are a poor substitute for facts.").

### E.    Plaintiff Consented to Spirit's Recording.

Section 10-402(c)(3) of the MWESA provides an express exception to liability "where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception." Md. Cts. & Jud. Proc. § 10-402(c)(3). Similarly, courts have long held that an invasion of privacy claim does not exist for a party that consented to the conduct at issue. *See Washington v. Glob. Tel\*Link Corp.*, No. 20-CV-01932, 2022 WL 3647782, at \*4 (D. Md. Aug. 24, 2022). Plaintiff's claims fail here because she could not have proceeded to use the Website as she claims without acknowledging Spirit's Privacy Policy that discloses the recording of which she complains.

Before Plaintiff could use the Spirit Website for any purpose, she was presented with a banner that informed her "[b]y continuing to use our website, you acknowledge the use of cookies," and directed her to Spirit's Privacy Policy by hyperlink. *See* RJN at Ex. 1. Plaintiff was required to click on the banner before she could use the Website. *Id.* at Ex. 1. Spirit's Privacy Policy disclosed that Spirit uses "technology to monitor *how you interact with our website*" which "may include which links you click on, or information that you type into our online forms" or "information about your device or browser." *Id.* at Ex. 2, p. 3; Ex. 3, p. 3 (emphasis added). Plaintiff was thus expressly on notice that Spirit tracks her website interactions, including "mouse clicks and movements" and other "information inputted" by on the Website, and, by continuing to browse Spirit's Website, Plaintiff assented to such tracking. *Id.* at Ex. 2, p. 3; Ex. 3, p. 3. Spirit consented to the recording of its own communications with Plaintiff as well.

Under Maryland law, consent can be demonstrated where, in light of the totality of the circumstances, it was given freely and voluntarily. *See Whack v. State*, 615 A.2d 1226, 1233 (Md. App. 1992). Further, under Maryland law, consent may be implied where a party is aware of the recording and continues to communicate anyway. *See Boston v. State*, 175 A.3d 836, 843 (Md.

App. 2017) ("At the inception of the call, the Detention Center warned Lee and his girlfriend that their call was being recorded and would be monitored. They proceeded to talk, thereby consenting to their call being recorded."); *Briddell v. State*, No. 1220, 2016 WL 4698158, at *3 (Md. App. Sept. 7, 2016) ("[B]oth Briddell and his wife consented to being recorded when they continued their phone conversation after having heard an automated message stating they would be recorded and monitored by the Wicomico Department of Corrections."). Courts have relied on similar principles to uphold clickwrap agreements before. *See, e.g.*, *James v. Synovus Bank*, No. 19-CV-1137, 2020 WL 1479115, at *3 (D. Md. Mar. 26, 2020) (enforcing a clickwrap agreement to arbitrate and collecting cases).

Courts have already found that the banner Spirit displayed before Plaintiff used the Website provided notice of Spirit's recording of communications. "[U]pon first accessing the Website, Plaintiff was presented with a banner . . . that explicitly warned her that 'by continuing to use [the] [W]ebsite, [Plaintiff] acknowledge[s] the use of cookies'—the functional equivalent of calling a customer service line and hearing 'Your call is being recorded for quality assurance purposes.'" *Jacome*, 2021 WL 3087860, at *7. "Given that Plaintiff had to affirmatively ex out of the cookie banner for it to no longer be visible on Spirit's Website, the Court is hard-pressed to find that Plaintiff was not aware that her interactions with the Website were being monitored." *Id.* (citing *United States v. Mitchell*, No. 11-CR-248, 2013 WL 3808152, at *11 (M.D. Fla. July 22, 2013)); *see also Mitchell*, 2013 WL 3808152, at *11 ("Defendant initiated calls to Newby and discussed his personal affairs with her, despite the fact that every call he initiated started with an automated warning that 'all inmate telephone calls are recorded.' This conduct demonstrates Defendant's consent to being recorded, and therefore, the recording of Defendant's phone calls to Newby did not violate the Fourth Amendment or the Wiretap Act." (citations omitted)); *Jackson v. State*, 18

So. 3d 1016, 1030 (Fla. 2009) (inmate impliedly consented to interception of his phone calls after being given notice they were subject to recording). As in *Jacome*, Plaintiff at least implicitly consented to the recording of her communications, and her consent precludes her claims as a matter of law.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated this 20th day of January, 2023.

Respectfully submitted,

*/s/ Tonya M. Esposito, Esquire*
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

Mark A. Salky, Esq. (admitted *pro hac vice*)
Jordanna Ishmael, Esq. (admitted *pro hac vice*)
Greenberg Traurig, P.A.
333 S.E. 2nd Ave., Ste. 4400
Miami, FL 33131
Telephone: 305-579-0816
Fax: 305-579-0717
Mark.salky@gtlaw.com
ishmaelj@gtlaw.com

Rebekah S. Guyon, Esq. (admitted *pro hac vice*)
1840 Century Park East, Ste. 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7716
Rebekah.guyon@gtlaw.com

*Counsel for Defendant Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2023, I electronically filed the foregoing Memorandum of Law in Support of the Motion to Dismiss with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Tonya M. Esposito, Esquire*
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

*Counsel for Defendant Spirit Airlines, Inc.*